IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF KANSAS

MALACHI EDWARDS and            )
MALCOLM EDWARDS,               )
                              )
            Plaintiffs,        )
                              )
      v.                      )          Case No. 10-2299-WEB
                              )
MONUMENTAL LIFE INSURANCE       )
COMPANY,                      )
                              )
            Defendant.         )

MEMORANDUM AND ORDER

Plaintiffs filed the above entitled case against Monumental Life Insurance Company, alleging breach of an insurance contract in failing to pay insurance benefits. Plaintiffs request judgment for the amount of the life insurance contract, interest, and attorney fees. The parties have filed cross motions for summary judgment.

I. Facts

1. Monumental issued a policy of accidental death insurance, Policy No. 14A9150558 (hereinafter the "Policy") to Patricia M. Smith. (Pretrial Order Stipulation, Doc. 27).

2. The Policy was in effect beginning November 8, 2006 and was in effect on June 2 - June 4, 2008. (Pretrial Order Stipulation, Doc. 27).

3. The beneficiaries under the Policy are Malachi Edwards and Malcolm Edwards. (Pretrial Order Stipulation, Doc. 27).

4. Patricia Smith was last seen alive on June 2, 2008. (Police Report, Doc. 29-2).

5. Patricia M. Smith died sometime between June 2, 2008 and June 4, 2008. (Pretrial Order Stipulation, Doc. 27).

6. Prior to her death, Smith was treated and prescribed Oxycodone for severe chronic

back pain, severe chronic neck pain, as well as hip pain and knee pain from arthritis.  (Accidental

Death Benefit Claim, Doc. 29-6).

      7.   The cause of death was listed as "oxycodone toxicity."  (Report of Death, Doc. 29-2;

Certificate of Death, Doc. 29-3).

      8.   The Certificate of Death also specified that the manner of death was an "accident."

(Certificate of Death, Doc. 29-3).

      9.   Dr. Donald Pojman, Medical Coronor, stated in the autopsy report, "Toxicology

revealed toxic levels of oxycodone within the blood, urine, liver and brain.  These levels were

most consistent with an accidental overdose."  (Autopsy Report, Doc. 29-4).

      10.   Dr. Pojman testified that at least 17 oxycodone pills were unaccounted for at the time

of her death.  (Doc. 29-5, Pojman Depo., p. 3).

      11.   Dr. Wimbish testified that the concentration of oxycodone found in Smith's blood

was 2.5 times the expected blood concentration, a value much higher than expected from the

dosage she was taking.  (Depo. Of Dr. Wimbish, Doc. 33-2).

      12.   Dr. Wimbish opined that Smith did not take the medication as prescribed.  (Depo. Of

Dr. Wimbish, Doc. 33-2).

      II.   <u>Jurisdiction</u>

      Jurisdiction is not in dispute and is properly before the court pursuant to 28 U.S.C. §

1332.

      III.   <u>Standard of Review</u>

      Summary judgment is appropriate when "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed.R.Civ.P. 56; Thomas v. Metropolitan Life Ins. Co., 631 F.3d 1153, 1160 (10th Cir. 2011).  A fact is "material" if under the substantive law it is essential to the proper disposition of the claim. Wright ex rel. Trust Co. of Kansas v. Abbott Laboratories, Inc., 259 F.3d 1226, 1231-1232 (10th Cir. 2001),  quoting Adler v. Wal-Mart Stores, 144 F.3d 664, 670 (10th Cir. 1998).  "An issue is genuine if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."  Adler, 144 F.3d at 670.  The court must "view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.  Atl. Richfield Co. v. Farm Credit Bank of Wichita, 226 F.3d 1138, 1148 (10th Cir. 2000).  The burden of showing that no genuine issue of material fact exists is borne by the moving party.  E.E.O.C. v. Horizon / MS Healthcare Corp., 220 F.3d 1184, 1190 (10th Cir. 2000).  Once the moving party meets the burden, the nonmoving party must demonstrate a genuine issue for trial on a material matter.  Concrete Works, Inc. v. City & County of Denver, 36 F.3d 1513, 1517 (10th Cir. 1994).

IV.  Discussion

Defendant Monumental Life Insurance Company (Monumental) requests summary judgment, arguing that plaintiffs cannot establish, as a matter of law, that the death of Patricia Smith was the result of a loss for which the Policy provides coverage.  Monumental argues that the Policy excludes coverage when death results from medical treatment, including the taking of medication.  Monumental also argues that since 17 pills were missing, and plaintiff cannot establish whether the overdose was accidental or intentional, plaintiffs cannot show the death of Smith comes under the Policy's accidental death language.

Plaintiffs allege that there is no evidence that Smith intentionally overdosed, she was

3

taking the medication under the care of a doctor, and the cause of death was an accidental

overdose.  Plaintiffs allege that Smith suffered a loss of life as a result of injury, and they are

entitled to death benefits of $150,000.00, including interest and attorney fees.

a.  <u>Insurance Contract</u>

      The language of an insurance policy should be construed to give effect to the intention of

the parties.  <u>Catholic Diocese of Dodge City v. Raymer</u>, 251 Kan. 689, 693, 840 P.2d 456

(1992).  A policy of insurance should be considered as a whole.  <u>Farm Bureau Mut. Ins. Co. v.</u>

<u>Horinek</u>, 233 Kan. 175, 180, 660 P.2d 1374 (1983).  Insurance policy language should be clean

and unambiguous, otherwise the policy will be liberally construed in favor of the insured.

<u>Catholic Diocese</u>, 251 Kan. at 693.  To be ambiguous, "a contract must contain provisions or

language of doubtful or conflicting meaning, as gleaned from a natural and reasonable

interpretation of its language.  Ambiguity in a written contract does not appear until the

application of pertinent rules of interpretation to the face of the instrument leaves it genuinely

uncertain which one of two or more meanings is the proper meaning."  <u>Id.</u>  The test in

determining whether an insurance contract is ambiguous is not what the insurer intends the

language to mean, but what a reasonably prudent insured would understand the language to

mean.  <u>First Financial Ins. Co. V. Bugg</u>, 265 Kan. 690, 694, 962 P.2d 515 (1998).

      The Policy at issue in the case was effective on November 8, 2006, and remained in

effect at the time of Smith's death.  The Policy contained the following provisions:

> INJURY means bodily injury caused by an accident.  The accident must occur
> while the Covered Person's insurance is in force under this Policy.  The Injury
> must be the direct cause of the Loss and must be independent of all other causes.
> The Injury must not be caused by or contributed to by Sickness.

> LOSS means your death or any physical impairment, incurred expense, or other

benefit covered under the terms of this Policy and any attached Riders.

SICKNESS means an illness or disease which results in a covered Loss while insurance for the Covered Person is in force under this Policy.

EXCLUSIONS

We will not pay a benefit for a Loss which is caused by, results from, or contributed to by:

> suicide, attempted suicide or intentionally self-inflicted injury, while sane or insane.
> sickness or its medical or surgical treatment, including diagnosis.
> taking of any drug, medication, narcotic, or hallucinogen, unless as prescribed by a Physician.   (Doc. 30-3).

The Policy did not define the term "accident."  The State of Kansas has defined "accident" as an "occurrence or event which is undesigned, sudden and unexpected, usually of an affective or unfortunate character and often, but not necessarily, accompanied by a manifestation of force." Bohanan v. Schlozman Ford, Inc., 188 Kan. 795, 798, 366 P.2d 28 (1961).

b.  Sickness Exclusion

The first issue is whether Smith's death is a result of sickness.  The policy contained an exclusion for loss which results from sickness.  Smith was treated for severe chronic back pain, severe chronic neck pain, as well as hip pain and knee pain from arthritis. Smith's doctor prescribed pain medication, specifically oxycodone, to treat the pain.  Smith died from toxicity of the medications.

In Kellogg v. Metropolitan Life Ins. Co., 549 F.3d 818 (10th Cir. 2008), the Court found that the insured's death was caused by a skull fracture resulting from a car accident, not by the seizure that caused the car accident.  Id. at 832.  The Court stated, "[T]he Plan does not contain an exclusion for losses due to accidents that were caused by physical illness, but rather excludes only losses caused by physical illness."  Id.  The court concluded, "[T]he fact that the policy at

issue here excludes losses that were caused or contributed to by physical illness does not change this analysis.  A reasonable policyholder would understand this language to refer to causes contributing to the death, not to the accident."  Id.  The court held that since the insured's death resulted from a skull fracture as a result of the car accident, and not the underlying sickness, the policy exclusion did not apply.  Id.

Just like in Kellogg, Smith's underlying sickness was not the cause of her death.  The physical illness Smith was treated for was severe chronic back pain, severe chronic neck pain, as well as hip pain and knee pain from arthritis.  Smith was prescribed pain killers for a disease, but the sole cause of death was toxicity, not the disease for which she was taking the medicine.  Smith's sickness was independent of the cause of death.  A reasonable policy holder would understand the exclusion in the policy to refer to causes contributing to the death, not to an accident.  Since the loss in this case was not caused or contributed to by a physical illness, Smith's death cannot be excluded under the plan for sickness.  Smith's death was a direct result of the medication she was prescribed, not her sickness.

c.  Accident v. Suicide

The next issue is whether Smith's death was the result of an accident or suicide.  The policy at issue is an accidental death policy.  Therefore, Smith's death must qualify as an accident for insurance coverage to apply.  Monumental argues that plaintiffs cannot show that Smith's death was the result of an accident.  In support of this argument, Monumental points to the seventeen missing pills at the time of Smith's death. Monumental also points to the toxic levels of oxycodone in her blood, urine, liver and brain at the time of her death.  Finally, Monumental presented deposition testimony of Dr. Wimbish, who opined that the concentration

6

of drugs in Smith's blood was higher than expected from the dosage that she was taking, and that the amount of drugs in her system was in excess of what was prescribed.  (Doc. 33-2, Wimbish Depo., p. 2, 6).  Monumental also presented evidence that two months before her death, Smith was seen at Woodridge Counseling Services.  (Doc. 33-12, Medication Progress Note).  Smith reported continued depression, increased moods and anger, numerous problems with her business, children, relationships, and issues with her two sons.  Her medications were increased, and permission was granted to fill two pain medication prescriptions, Loritab and Oxycontin, early due to the expiration of insurance.  The expiration date was not disclosed.

Plaintiffs argue that there is no evidence that Smith's death was a suicide.  Plaintiffs point to the medical examiner's conclusion that this was an accident, and the doctor's opinion that the level of oxycodone in her system is not consistent with someone who took seventeen pills.  (Doc. 30-4, Pojman Depo., p. 1, 3).

Plaintiffs rely on Flores v. Monumental Life Insurance Company, 620 F.3d 1248 (10th Cir. 2010), in support of the position that Smith's death qualifies as an accident. In Flores, the insured had taken the prescription medication Verapamil to control her hypertension for a number of years.  She fell and broke her arm, and was admitted to the hospital for surgery.  Ten days later, she was transported to a rehabilitation center, and died within hours of admission due to Verapamil toxicity.  The Tenth Circuit found that where a pre-existing disease only contributed to death insofar as it placed the insured in a position where an unanticipated and unintended occurrence might happen, then coverage is not excluded.  Id. at 1252.  After a review of Oklahoma cases, the Tenth Circuit found that "an accidental prescription drug overdose that is the sole proximate cause of a insured's death is an injury independent of all other causes."  Id. at

1253.

The Flores Court was specifically interpreting Oklahoma law in determining that a prescription drug overdose qualifies as an accident under an accidental life insurance policy. A review of Kansas cases shows that the Kansas courts have reached the same conclusion.

In Spence v. Equitable Life Assurance Soc. of U.S., 146 Kan. 216; 69 P.2d 713 (1937), the insured died and the death certificate listed the cause of death as barbital poisoning on November 5, 1934, followed by respiratory and cardiac failure on November 6, 1934. The defendant claimed the insured intended to take an overdose of barbital, although the defendant did not claim that the insured was attempting to commit suicide. The defendant argued that the death of the insured, although unanticipated, was not an accident. The jury determined the overdose of barbital was accidental. Id. at 715. Reviewing the definition of "accident" and a number of cases applying accident to insurance policies, the court found that an accidental overdose comes within the meaning of the policy. Id. at 717. The Court found that an accidental drug overdose was an accidental death within the meaning of the policy. Id. at 713.

In Hawkins v. New York Life Ins. Co. of New York, N.Y., 176 Kan. 24, 269 P.2d 389 (1954), the insured died as a result of barbiturate intoxication. Plaintiffs alleged the overdose was accidental, and that she did not intend the amount of the drug taken to cause any injury. Id. at 25. Defendant argued that the insured intended to commit suicide, and the result was not an accident. Id. at 25-26. The jury found for the plaintiff. On appeal, the defendant argued there was insufficient evidence for the jury to find insured's death was an accident. The Court stated, "[W]ithout repeating all the evidence as to dosages taken by the insured, we think it such the jury could properly infer that insured was in ignorance that the amount she took was a lethal does and

that her death was by accidental means." <u>Id.</u> at 38.  The Court found coverage under the accidental policy.

Kansas law contains a presumption against suicide.  See <u>Hawkins v. New York Life Ins. Co.</u>, 176 Kan. 24, 269 P.2d 389 (1954); <u>Broyles v. Order of United Commercial Travelers</u>, 155 Kan. 74, 122 P.2d 763 (1942); <u>Mutual Life Ins. Co. V. Wiswell</u>, 56 Kan. 765, 44 Pac. 996 (1896).  "The presumption against suicide is based on the nearly universal human characteristics of love of life and fear of death."  <u>Evans v. Provident Life & Acc. Ins. Co.</u>, 249 Kan. 248, 253, 815 P.2d 550 (1991), citing 29 Am.Jur.2d, Evidence § 217.  The <u>Evans</u> Court cited the general rule as:

> "In cases where the cause of death is in issue but there is nothing to show how death was caused, there is a negative presumption against suicide and an affirmative presumption of death by accidental means.  In other words, all other things being equal, it is to be presumed when a person is found dead, that he did not die by his own hand.  This rule finds frequent application in actions upon insurance policies where there is doubt whether the death of the insured was caused by accident or by suicide.
> The presumption against suicide is a rule of law which permits, and according to some courts requires, the conclusion, in the event of an unexplained death by violent injury, that the death was not suicidal, until credible evidence of self-destruction is offered.  It is a strong presumption which should not be displaced by slight contrary proof, and can be overcome by circumstantial evidence only if it is of such quality and weight to negate every reasonable inference of death by accident."  29 Am.Jur.2d, Evidence § § 217, 219.

The Evans Court also considered 31A C.J.S., Evidence § 135, p. 286, which states:

> "As a general rule, the presumption is that a death was accidental, not suicidal, where the cause was either accident or suicide and there is no evidence explaining the cause.  Even self-inflicted death is presumed to have been accidental rather than suicidal.  On the other hand it has been held that the presumption against suicide does not carry with it the presumption that the death was accidental, although the presumption against suicide is so strong that unless the evidence negatives every reasonable inference of death by accident, a finding of death by accident will be justified."

The burden is on the defendant to prove an exemption excludes coverage, such as suicide. Mutual Life Ins. Co. v. Wiswell, 56 Kan. 765, , 44 P. 996 (1896). The court or jury, presented with circumstantial evidence which would support a finding of either suicide or accidental death, should properly consider the rule that the presumption is against suicide. Muzenich v. Grand Carniolian Slovenian Catholic Union, 154 Kan. 537, 119 P.2d 504, 507 (1941).

In the case at hand, Smith reported continued depression, but there is no evidence that it rose to the level to which she sought treatment, either in the form of therapy or medication. There were seventeen missing pills, along with toxic levels of oxycodone in her system. The expert testimony presented by Monumental states that the concentration of drugs in Smith's system was higher than expected and in excess of what was prescribed. Plaintiffs' expert states that the level in Smith's system is not consistent with someone who took seventeen additional pills. Smith had a prior history of drug abuse, but nothing recently, and there are no facts before the court that Smith was abusing her prescription medication. Finally, Smith reported her problems with her family, her business, and her financial concerns. There is nothing in the record to show whether the concerns were typical day-to-day concerns, or problems in Smith's life which were overwhelming and caused her to commit suicide.

The presumption against suicide is not overcome by any evidence presented by Monumental showing that Smith's death was a result of suicide, or any facts that controvert the Plaintiff's theory that Smith's death was an accident. "Where the evidence as to the death being accidental or suicidal is so nearly balanced as to leave the question in doubt, the presumption is in favor of the theory of accidental death." Wiswell, 56 Kan. 756, Syl. ¶ 2. The factual evidence

before the court, and the cases cited, considered against the backdrop of the presumption against

suicide, result in the conclusion that Smith's death was accidental.

d.  <u>Medical Treatment Exclusion</u>

   Monumental argues there are two additional exclusions which bar payment in the case at

hand.  First, Monumental argues that since Smith was taking the prescription drug under a

doctor's order, it qualifies as "medical treatment" and bars recovery.  Second, Monumental

argues since the loss is a result of the taking of a drug or narcotic, the loss is excluded.  The

exclusions relied on by Monumental state as follows:

> We will not pay a benefit for a Loss which is caused by, results from, or
> contributed to by:
> - sickness or its medical or surgical treatment, including diagnosis.
> - taking of any drug, medication, narcotic, or hallucinogen, unless as prescribed
> by a Physician.   (Doc. 30-3).

As stated above, the loss in this case is not caused by, resulted from, or contributed to by Smith's

sickness.  However, if the loss is caused by medical treatment, then the exclusion applies, and

recovery by the beneficiaries is precluded.  There is a long history of cases which have found

that the medical treatment exclusion bars recovery.

   In <u>Brimer v. Life Ins. Co. Of North America</u>, 2011 WL 650329 (N.D.Okla. February 11,

2011), the court considered whether a prescription drug overdose in the course of medical

treatment excludes coverage.  The Court found that the issue of whether the medical treatment

exclusion applies is a question of law.  <u>Id.</u> at *7.  Upholding its previous ruling that the medical

treatment exclusion applied, the Court found that "courts have consistently held that a medical

treatment exclusion applies to accidental death caused by overdose of drugs prescribed by a

doctor in the course of medical treatment."  <u>Id.</u> at *5.

In Grobe v. Vantage Credit Union, 679 F.Supp.2d 1020 (E.D.Mo. 2010), the Court considered an exclusion in a life insurance policy for "loss resulting from: Injury sustained while voluntarily taking drugs which federal law prohibits dispensing without a prescription, including sedatives, narcotics, barbiturates, amphetamines, or hallucinogens, unless the drug is taken as prescribed or administered by a licensed physician." Id. at 1031.  The Policy defined Injury as, "bodily injury resulting directly from accident and independently of all other causes which occurs while the Covered Person is covered under the policy.  Loss resulting from a) sickness or disease; or b) medical or surgical treatment of a sickness or disease; is not considered as resulting from injury." Id.  The Court found that the insured died as a result of methadone overdose, which had been prescribed by a physician for a medical condition.  Id.  The Court considered the medical treatment exclusion and the prescription drug provision of the policy, and found that the policy made a distinction between treatment for sickness and prescription drug overdose.  The court stated,

> "AD & D policies are intended to cover accidental deaths and losses, not all deaths and losses.  The medical treatment exclusion is intended to exclude coverage for those individuals who have assumed the risk of medical treatment, including the possibility of death.  Courts have consistently held that a medical treatment exclusion applies to accidental death caused by an overdose of drugs prescribed by a doctor in the course of a treatment for a sickness or disease. Death caused by sickness or disease, and the medical treatment sought for such, is not unforeseeable....The exception to the prescription drug exclusion, for when an individual is prescribed a regulated drug by a physician for something unrelated to disease or sickness, and suffers a loss while taking that drug, recognizes the difference between taking drugs illegally and taking them legally.  This exception to the exclusion does not, however, modify the definition of "injury" found at the beginning of the policy, which specifies that losses resulting from medical treatment of a sickness or disease are not injuries.  The two provisions do not conflict, and the insurance policy is not ambiguous." Id. at 1033-34.

The Court ruled that since the deceased was taking a prescribed medication for the treatment of a

sickness, it did not qualify as an injury under the policy, and it was not covered. Id. at 1034.

In Barkerding v. Aetna Life Ins. Co., 82 F.2d 358 (5th Cir. 1936), the Court defined medical and surgical treatment as "what is done by a physician of any recognized type or by a surgeon in diagnosing a bodily ailment and seeking to alleviate or cure it.  It includes the things done by the patient to carry out specific directions given for these ends by a physician." Id. at 359.  In Barkerding, the Court found that any treatment, even using heat as a curative agent that causes burning, constitutes medical treatment and is excluded from the accidental death policy.

In Reid v. Aetna Life Ins. Co., 440 F.Supp. 1182 (D.C.Ill., 1977), the insured, while in the hospital recovering from surgery, was administered the incorrect medication by a nurse.  The surgery was for non-accidental reasons.  The Court found that the giving of medicine was a "direct consequence of medical treatment." Id. at 1183.  The Court found recovery by the beneficiary was barred. Id. at 1184.

Plaintiffs again rely on Flores to argue that the medical treatment exclusion is ambiguous.  Monumental argues that the Flores decision is only applicable to Oklahoma cases, and is not transferable to Kansas.  It is worth noting that the language in the Flores life insurance contract contains the same language as the contract at issue in this case.   In Flores, the Tenth Circuit found that "a reasonably prudent layperson could interpret the sickness definition to extend coverage to losses resulting from an illness or disease, despite other language in the policy suggesting a contrary result." Flores, 620 F.3d at 1254.  The Court also found that the policy contained contradictory provisions, again resulting in ambiguity. Id. at 1255.  In making this determination, the Court considered and relied upon a number of cases interpreting Oklahoma law and Oklahoma contract interpretation.

13

Monumental's argument that the Flores case is not applicable to Kansas law does not take into consideration the similar contract, the similar language, and the fact that the defendant in both cases is the same insurance company.   Further, a review of Kansas law shows that the insurance contract construction rules in Kansas are clearly in line with Oklahoma contract interpretation.  See American Family Mut. Ins. Co. v. Wilkins, 285 Kan. 1054, 179 P.3d 1104 (2008) (An insurance contract is ambiguous if it contains provisions with doubtful or conflicting meaning, as ascertained "from a natural and reasonable interpretation of its language. Ambiguity in a written contract does not appear until the application of pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain which one of two or more meanings is the proper meaning."); Bramlett v. State Farm Mut. Auto. Ins. Co., 205 Kan. 128, 130, 468 P.2d 157 (1970) (The language of an insurance policy must be construed to give effect to the intention of the parties.  The court should consider the policy as a whole.); Brumley v. Lee, 265 Kan. 810, 813, 963 P.2d 1224 (1998) (Where the terms of an insurance policy are ambiguous or uncertain, conflicting, or susceptible of more than one construction, the construction most favorable to the insured must prevail.).  Clearly, Oklahoma rules of contract interpretation are substantially similar to Kansas, and the Flores analysis, although it applies Oklahoma law, is therefore persuasive authority.

In Flores, the Tenth Circuit reviewed a policy with provisions identical to Smith's policy: the same terms, the same type of accidental death insurance policy, written by the same defendant.  The Court found the provision to be ambiguous.  The cases previously discussed show that the medical and surgical treatment exclusion is consistently upheld in the courts. However, when the exclusion, as written, is ambiguous, the court must construe the policy in

14

favor of the insured.  A review of Kansas law on insurance policy interpretation does not

produce any cases which would suggest that Kansas Courts would employ a different analysis

from the Tenth Circuit.  Therefore, this courts holds, pursuant to Tenth Circuit precedent,  the

language of the medical treatment exclusion is ambiguous.  Construed in favor of the insured, the

policy covers losses that result from medical treatment and therefore the exclusion does not bar

coverage.

e.  <u>Prescription Drug Exclusion</u>

The next issue is whether the prescription drug exclusion applies to bar coverage.   The

Policy provision states, "We will not pay a benefit for a Loss which is caused by, results from, or

contributed to by taking of any drug, medication, narcotic, or hallucinogen, unless prescribed by

a Physician."   Monumental argues that the taking of any medication, even if prescribed by a

physician, precludes recovery.

The language of a contract is "given its plain meaning, consistent with the reasonable

expectations, objectives, and intent of the parties."  <u>American States Ins. Co. v. McCann by and</u>

<u>through McCann</u>, 17 Kan.App.2d 820, 824, 845 P.2d 74 (1993), citing <u>Krombach v. Mayflower</u>

<u>Ins. Co., Ltd.</u>, 785 S.W.2d 728, 731 (Mo.App. 1990).  The definition of "unless" is "except on

the condition that; under any other circumstances than."  Merriam-Webster Dictionary, *available*

*at* www.merriam-webster.com.  A reasonable person would read the word "unless" as "except",

which would make the provision state that death benefits would not be paid for any loss related

to the taking of any drugs or medication, *except* for medications prescribed by a Physician.  A

reasonable person would understand this provision as precluding recovery for the taking of

substances without the advice of a physician, like illegal substances, but not excluding recovery

for the taking of a substance under the advise of a physician.  If the words following "unless" apply to Smith's death, then the exclusion does not apply.  In this case, the medication which resulted in the loss was prescribed by a physician.

However, the question remains as to what the term "unless as prescribed by a Physician" means.   Does this mean that Smith has to take the medication *as prescribed* for coverage, or does this mean that if Smith takes medication prescribed, regardless of whether she takes it correctly or incorrectly, the exclusion does not apply?  Because this term is ambiguous, and the court must construe ambiguous terms in favor of the insured, the court finds that the exclusion does not apply, as the loss was a result of a medication prescribed by Smith's physician, assuming the facts are as alleged by plaintiffs.

f. Interest

Plaintiffs request interest pursuant to K.S.A. § 40-3110(b).  This statute provides for interest on personal injury protection benefits as a result of accidental bodily injury arising out of the ownership, operation, maintenance or use of motor vehicles.  See also K.S.A. § 40-3102. Obviously, this case does not arise out of bodily injury related to a motor vehicle.  Plaintiffs request for interest is denied.

g. Attorney Fees

Plaintiff requests attorney fees pursuant to K.S.A. § 40-256.  The applicable wording is as follows:

> "That in all actions hereafter commenced, in which judgment is rendered against any insurance company .... if it appear from the evidence that such company ... has refused without just cause or excuse to pay the full amount of such loss, the court in rendering such judgment shall allow the plaintiff a reasonable sum as an attorney's fee for services in such action..."

In the case at hand, the court has decided all issues in favor of the Plaintiffs, and orders judgment

be entered accordingly.  The Plaintiff's request for attorney fees is granted.  The Plaintiffs'

Motion for Attorney Fees should be filed in accordance with D.Kan. Rule 54.2.

V.  Conclusion

 IT IS THEREFORE ORDERED that Defendant Monumental Life Insurance Company's

Motion for Summary Judgment (Doc. 28) be denied.

 IT IS FURTHERED ORDERED that Plaintiffs' Motion for Summary Judgment (Doc.

30) is granted.

 IT IS FURTHERED ORDERED that Plaintiffs' request for attorney fees is granted.

 IT IS ORDERED that the Clerk's office enter judgment in accordance with this order.

 IT IS SO ORDERED this 23rd day of August, 2011.


  s/   Wesley E. Brown
Wesley E. Brown
Senior United States District Court Judge